# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs January 16, 2015

## IN RE: JONATHAN F.

**Appeal from the Juvenile Court for Sevier County**
**No. 13001830      Jeff Rader, Judge**

_____

**No. E2014-01181-COA-R3-PT-FILED-FEBRUARY 20, 2015**

_____

This is a termination of parental rights case. The court-appointed Guardian *ad Litem* ("the Guardian") for the minor child Jonathan F. ("the Child")[1] filed a petition in the Juvenile Court for Sevier County ("the Juvenile Court") seeking to terminate the parental rights of Amy F. ("Mother") and Uriah F. ("Father") to the Child. The Department of Children's Services ("DCS") filed a response joining in the Guardian's petition. After a trial, the Juvenile Court terminated Mother's and Father's parental rights on a host of grounds. We vacate certain of the grounds as relates to Father. Otherwise, we affirm the termination of Mother's and Father's parental rights to the Child. We affirm the judgment of the Juvenile Court as modified.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed as Modified; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Timothy J. Gudmundson, Sevierville, Tennessee, for the appellant, Amy F.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Uriah F.

Herbert H. Slatery, III, Attorney General and Reporter, and, Ryan L. McGehee, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

Robert L. Huddleston, Guardian *ad Litem* for Jonathan F.

---

[1]Jonathan's name is also spelled "Johnathan" in the record. In any event, we seek to protect identities in parental termination cases, so the discrepancy is not at odds with that practice.

# OPINION

## Background

The Child was born in March 2009. Mother and Father, the Child's parents, had an unusual living arrangement whereby Father's girlfriend moved in with the family to serve as the "babysitter." Father and his girlfriend later had an altercation that resulted in Father's arrest. In February 2013, the Child was removed from Mother's home due to drug and alcohol issues in the home. Father had been incarcerated in January 2013, and, in April of that year, was convicted of four counts of assault, aggravated assault, aggravated assault with bodily harm, and child abuse and neglect. Carol Davis ("Davis"), a DCS family services worker, was assigned to the Child's case. DCS provided various services for the parents over the course of the case. In February 2013, Mother was ordered to pay $50.00 per month in child support. Permanency plans were developed for Mother and Father. In May 2013, the Child was adjudicated dependent and neglected. The Guardian filed a petition for termination of parental rights as to Mother and Father in December 2013, a petition DCS joined. Trial was held in May 2014.

Davis testified that Mother, while compliant with some aspects of her permanency plan, continued to struggle with substance abuse. Upon Mother's most recent arrest, Davis no longer believed that Mother could provide a safe and stable home. Davis testified to Mother frequently having transportation and job conflicts with in-home services. Regarding Mother's employment, Mother worked at both Johnson's Inn and Dunkin Donuts from March 2013 through around June 2013. Sometime before June 2013, however, Mother stopped working at Dunkin Donuts. Regarding Father, Davis interviewed him in jail and learned that alcohol was a driver of his violent behaviors. According to Davis, the Child has several special needs issues such as developmental delay. As of trial, the Child was in a foster home where he is well-adjusted.

Mother testified she had been arrested in March 2014 after marijuana and drug paraphernalia were found at her home. In spite of the fact that green leafy substance, scales, and other such articles were situated on a table in the living room, Mother claimed she was unaware that these items were in her home. Mother was working at Johnson's Inn and paying $200 per week in rent. Mother also received food stamps. Mother had made only one documented payment of $50 toward child support. She was required to pay $750 during the relevant period. Regarding why she had not made all the child support payments as required, Mother stated that her income simply was not enough to cover her expenses. Nevertheless, Mother planned to make a $100 payment toward child support on the day of the hearing. Mother acknowledged having relapsed on drugs, but believed that she would remedy the problem if given more time.

Father, who had been treated for cancer while incarcerated, testified that he was a changed man. Father was scheduled to be released from prison in 2018, but he believed he would be released earlier for good behavior. Regarding his violent past, Father testified that in one instance, he beat someone up who beat up his legless uncle. On the other offense, Father testified that he never harmed the Child, but admitted that he shoved his girlfriend while she was holding the Child. While incarcerated, Father had completed a number of courses and attended Alcoholics Anonymous.

In a June 2014 order, the Juvenile Court terminated the parental rights of Mother and Father to the Child. The Juvenile Court made thorough and detailed findings of fact and conclusions of law, which we quote from:

### GROUND I
### ABANDONMENT – BY INCARCERATED PARENT
### (as to the Father)
### T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv), -102(1)(C) and -102(1)(E)

This ground applies only to [Father]. It has been alleged that [Father] abandoned [the Child] because he willfully failed to visit the child or engaged in token visitation in the four (4) months preceding the filing of this Petition. However, the relevant time period would actually extend to prior to the custodial episode due to [Father] having spent the entirety of this case in the custody of either the Sevier County Sheriff or the Tennessee Department of Corrections. It was uncontroverted that [Father] has been incarcerated for all of the time during the four (4) months preceding this Petition, having been incarcerated throughout the entirety of [the Child's] custodial episode and currently serving a sentence in the custody of the Tennessee Department of Corrections for violations of his prior probation and for the new charges he incurred. It was alleged that [Father] did not have meaningful contact with the minor child during all or part of the four (4) months immediately preceding the beginning of his latest sentence, which the Tennessee Department of Corrections indicates began on June 15, 2013. However, the evidence presented at trial indicates that [Father] spent the entirety of this case incarcerated, as he spent the time from January 8, 2013 through the imposition of his sentence on June 15, 2013 awaiting disposition of his criminal cases in the custody of the Sevier County Sheriff. Therefore, the relevant time period would be September 8, 2012 through January 8, 2013.

Upon the testimony presented at trial and especially the argument of counsel for the Department, the trial court finds that [Father] abandoned his

child through failure to have meaningful visitation with [the Child] during the requisite time period referenced above. Instead of focusing on raising his son, [Father] instead chose to spend time with his young girlfriend, Nikki [D.], and engage in other criminal acts, including his admitted use of marijuana. Further proof of such is shown in that [Father] was also arrested during the requisite time period for an Aggravated Assault on a victim where the injuries included a subdural hematoma.[2] Additionally, there was a stipulation during the dependency and neglect portion of the case that the home was bare of food and basic essentials. [Father] offers no credible proof that he was providing for the child in any other form besides what could be described as token support. The trial court finds that clear and convincing evidence demonstrates that [Father] abandoned his child through his behaviors for the four (4) months prior to his continued incarceration.

## GROUND II
### ABANDONMENT – FAILURE TO SUPPORT
### (as to the Mother)
### T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(I), -102(1)(B) and -102(1)(D)

It was alleged that [Mother] has abandoned [the Child] because she willfully has not supported the child or has made only token payments toward the children's support in the four (4) months immediately preceding the filing of this Petition. By previous Order of this Court, dated June 14, 2013, [Mother] was ordered to pay $50.00 per month for the current support of the minor child. Testimony at trial, along with documentary evidence introduced as to her pay history through the Tennessee Department of Human Services, Child Support Enforcement Services, Non-Custodial Parent Payment Summary, showed that [Mother] had made one single payment of $50.00, credited on August 21, 2013. The requisite time period for the four (4) months prior to the filing of the Petition was from August 16, 2013 to December 16, 2013. The one sole payment credited to [Mother] does fall within the requisite four (4) month period, albeit by a matter of days. With the time that it naturally takes for a money order to be purchased, sent to the Child Support Central Receiving Unit in Nashville, and eventually credited to the proper account, it is more than likely correct to state that the one payment that [Mother] made during the entirety of the case was actually placed into the mail prior to the four (4) month period, even if it was credited during that four (4)

---

[2]According to the Affidavit of Complaint, this incident occurred on October 14, 2012, with [Father] being arrested five (5) days later. The lapse of time was due to [Father] reportedly having fled the scene.

month period. Even if the trial court was to consider this one payment to be in the four (4) month time period, it is token in nature as it applies to [Mother].

[Mother] is able-bodied and capable of working and earning enough to support herself as well as paying child support. Testimony at trial indicated that she had worked at several different jobs during the custodial episode, including one period of employment at Dunkin Donuts which, it appears, ended on her own volition. There was no testimony that [Mother] has applied for Social Security Disability due to any permanent physical or mental affliction. Nor was there proof presented to lead to the conclusion that [Mother] was in jail or incapacitated for any substantial period of time in the four (4) months before this Petition was filed. Indeed, [Mother's] own testimony leads to the conclusion that she was working – one job or two jobs, depending on that date – but not paying support. [Mother] did not pay any substantial support for the minor child in the four (4) months prior to the filing of the Petition. This claim has been substantiated through testimony and documentary proof. Furthermore, both the Department and Guardian *ad Litem* elicited testimony from [Mother] that indicated that [the Child] was not the only active child support case in which she was failing to provide support. Testimony was provided that showed that [Mother] knew how to make payments, as she had a long history of making payments throughout the years leading up to 2010, but had failed to make a payment in that other case in nearly two (2) years with one single payment having been made in 2012 and none in 2011, 2013, or 2014. In addition, there was no testimony that demonstrated any gifts or other things of value that would count as anything more than token support. [Mother] willfully failed to provide support for the care of [the Child] for the requisite four (4) month time period despite having the ability to do so.

When the parties were last before the court two (2) weeks ago, [Mother] indicated that she had submitted another $50.00 payment the week prior as part of a permanency hearing. As indicated by the Guardian *ad Litem* and the Department, there is no proof of that payment having ever been made. [Mother] provides no proof as to why there is no record of this payment, only that the payment must have been sent to the wrong address. Given her previous history with paying child support and the complete lack of proof as to her reasoning why her sworn account of this payment was not true, the court finds that only one payment has ever been made by [Mother].

\*\*\*

-5-

[Mother] was able to provide regular support for the care of [the Child], although she simply did not do so. Despite having reported employment throughout the case, [Mother] failed to provide support in the amount that would rise to anything but token support. [Mother] did not provide support besides being on notice that failure to do so could result in the termination of her parental rights. In addition, [Mother] admitted in her responses to the Request for Admissions submitted by the Department that she had failed to pay her child support as ordered. That being the case, the trial court finds by clear and convincing evidence that [Mother] abandoned [the Child] by willfully failing to support the minor child for the four (4) months immediately preceding the filing of this Petition.

## GROUND III
## SUBSTANTIAL NONCOMPLIANCE WITH PERMANENCY PLAN
### (as to both Mother and Father)
### T.C.A. §§ 36-1-113(g)(2) and 37-2-403(a)(2)

After [the Child] came into State's custody on February 1, 2013, the Department of Children's Services created permanency plans for [Father] and [Mother]. The permanency plan listed a number of requirements that the Respondents needed to satisfy before the minor child could safely be returned home. The initial plan gave the Respondents until August 1, 2013, to satisfy those requirements, with a revised permanency plan extending the goal of completing the requirements to beyond the time when the Petition to Terminate Parental Rights was filed.

The initial plan required [Mother] to complete the following tasks: maintaining standard and regular visitation with the minor child; obtain and maintain a safe, stable, and reliable home for the minor child to live in free of abuse and neglect; complete an alcohol and drug assessment and follow all recommendations; refrain from using illegal drugs; submit to random and frequent drug screens; appropriately supervise the minor child and protect him from known sex offenders; seek emotional support, education, and resource information for domestic violence victimization; attend all court hearings; follow all court orders, and not incur any new legal charges; obtain and maintain reliable transportation, including taking steps to obtain a valid drivers license, appropriate car seat for the minor child, and automobile insurance; obtain and maintain a legal source of income; and complete a mental health assessment and follow all recommendations after reporting her history honestly to the examiner . . . .

\*\*\*

Likewise, the initial permanency plan required [Father] to complete the following tasks: complete an alcohol and drug assessment and follow all recommendations; submit to random drug screens; follow all court orders, including the no-contact order entered through his criminal prosecution; obtain and maintain a legal source of income; obtain and maintain safe and stable housing; obtain reliable transportation, including obtaining a valid drivers license, appropriate car seat for the minor child, and automobile insurance; properly supervise the minor child and protect him from known sex offenders; resolve his legal charges and not incur new charges; complete a batterer's intervention program; submit to a mental health assessment and follow all recommendations; and complete an anger management program . . . .

\*\*\*

Both [Mother] and [Father] have failed to substantially comply with the responsibilities and requirements set out for them in the permanency plans. The court finds that Department of Children's Services and their service providers have made attempts in order to assist [Mother] and [Father] with the tasks on their plans; however, [Mother] and [Father] have not focused on completing the tasks at hand and have not attempted to address the issues that brought [the Child] into State's custody within the bounds of the permanency plans. When questioned about the parents' level of compliance, FSW Carol Davis indicated that [Mother] had shown some compliance with visitation at times (although several court orders indicate that visitation has been sporadic throughout the case, with one three (3) month period without visits recently), completed two (2) alcohol and drug assessments but was noncompliant with the recommendations thereof, and had communicated with Safe Space. All other areas of the plan were action steps where [Mother] had been substantially noncompliant. Likewise, FSW Carol Davis indicated that [Father] had completed the alcohol and drug assessment in the Sevier County Jail that the Department had paid for and was in the process of resolving the criminal issues that he had incurred. However, [Father] was also noncompliant with all other action steps of the permanency plans . . . .

\*\*\*

-7-

**GROUND IV**
**ABANDONMENT FOR FAILURE TO PROVIDE A SUITABLE HOME**
**(applies to both Mother and Father)**
**T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii)**

The trial court finds that clear and convincing proof has shown that the Sevier County Juvenile Court adjudicated the child as dependent and neglected and placed him in the custody of the Department, pursuant to a Petition filed by the Department in Juvenile Court, after he was removed from the physical custody of [Mother] on February 1, 2013, [Father] having been incarcerated a few weeks prior. The Sevier County Juvenile Court's initial Protective Custody Order approving the removal found that it was appropriate for reasonable efforts to not be made by the Department of Children's Services at the time of the removal due to exigent circumstances. [Father] and [Mother] provided no credible evidence that either has made any reasonable efforts known to the Petitioner to provide a suitable home for [the Child]. At no time has [Mother] maintained stable housing to the point where she informed the Department and/or the Guardian *ad Litem* that she had obtained safe, stable housing to the point of a home inspection was being requested, as per the permanency plans. It is crucial in this analysis to point out that clear and convincing proof was provided at trial that [Mother] was arrested on March 12, 2014 – a mere six (6) weeks prior to trial – on criminal drug charges, including a felony charge of Possession of Schedule VI for Sell or Delivery. The court does not feel that criminal activity involving the drug trade qualifies as a suitable home. [Father] has been incarcerated through this custodial episode and is expected to be in the custody of the Tennessee Department of Corrections with a sentence expiration date of April 8, 2018. [Father] mentioned an unknown home at an unknown address as rebuttal that he had provided a suitable home for [the Child]. The court finds this to be unsubstantiated and illusory.

***

**GROUND V**
**PERSISTENT CONDITIONS**
**(applies to both Mother and Father)**
**T.C.A. § 36-1-113(g)(3)**

There are three primary elements that must be shown by clear and convincing evidence in order to find that persistent conditions exist,

-8-

constituting a ground for termination of parental rights. One aspect of this ground is that the child must be removed from the home of the parent or guardian against whom termination of parental rights is sought. *In Re: B.P.C.*, No. M2006-02084-COA-R3-PT (Tenn. Ct. App. April 18, 2007). That applies here, as testimony at trial showed that [the Child] was removed from the home of [Mother], [Father], and [Father's] girlfriend (prior to her becoming a victim – like [the Child] – of [Father's] aggravated assaults and child abuse). With regards to persistence, the trial court must endeavor to apply the proof as received at trial to indicate whether or not the conditions that led to the minor child coming into custody have been remedied or will be remedied in the near future. See *In Re: the Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT (Tenn. Ct. App. Oct. 30, 2007). For [Mother], the evidence was clear and convincing that she had not effectively dealt with her dependency on drugs and alcohol, as evidenced by her failed drug screens, including a hair follicle in November of 2013, or with the issues of domestic violence in her life. For [Father], the evidence was clear and convincing that he has not dealt with the anger management issues, domestic violence issues, and alcohol and drug issues that contributed to the removal of [the Child] from the home. Finally, the continuation of the parental relationship must be found to greatly diminish the chances for the child being in a safe, stable, and permanent home. Due to the failure to deal with the issues enumerated above and the lack of a safe, stable, and permanent home, the trial court finds that such a condition exists here.

\*\*\*

## GROUND VI
## CHILD ABUSE CONVICTION WITH SENTENCE GREATER THAN TWO YEARS
**(applies to the Father)**
**T.C.A. §§ 36-1-113(g)(5)**

Of all of the grounds alleged against [Father] in this case, this is the most clear. Under T.C.A. § 36-1-113(g)(5), a ground for termination is established when that "parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent . . ." The ground does not require that the parent be incarcerated for the entirety or even a portion of the sentence, although [Father] is obviously incarcerated

for his conviction where [the Child] is listed as the victim as he had to be transported from a prison in Davidson County for his participation in this trial . . . .

One of the several certified copies of judgments offered into evidence shows that [Father] entered into a sentence on Case Number . . ., Count 3, on April 30, 2013, having been convicted of Child Abuse and Neglect with the minor child being listed as the victim. The judgment indicates that The Honorable Richard Vance found [Father] guilty of Child Abuse and Neglect, a Class D felony, with a four (4) year sentence to serve in the custody of the Tennessee Department of Corrections, with [Father] being considered as a Range I (Standard) offender as part of the plea negotiations and with the sentence in this case to run concurrent with [Father's] sentence in Case . . . and consecutive to his violations of probation in Case Number . . . and Case . . . . Through the policy of the Sevier County Circuit Court, minors are not referenced by name on judgments, so "JF" is referenced as the victim on the judgment, both in the "Victim Name" and "Special Conditions" sections. Testimony solicited at trial, which was uncontroverted, showed that [Father's] sentence is set to expire on April 8, 2018. The minor child was under eight (8) years of age at the time of the entrance of sentence. There does not seem to be any dispute as to the proof as stated above.

There does not appear to be a justifiable defense that can effectively combat the statute at issue once the above analysis of the proof has occurred. For instance, in *In the Matter of K.G.*, No. W2003-00809-COA-R3-PT, it was unsuccessfully argued that the Mother in that case did not have notice by her criminal defense attorney that her plea of guilty to criminal child abuse charges could result in the termination of her parental rights. The Court of Appeals found this argument to be unpersuasive. Likewise, in this case, [Father] argues that he did not abuse [the Child] despite the certified copy of the judgment of conviction that states otherwise.[3]

***

---

[3]There is an undisputed pattern of failure to take responsibility for his actions throughout [Father's] testimony. According to [Father], all of his convictions were miscarriages of justice, where victims either had to be assaulted because they had it coming or he had to plea guilty in order to avoid more serious charges or a longer, more onerous sentence. He seems to have an excuse for everything. For this reason, the credibility of his testimony has been effectively questioned.

-10-

**GROUND VII**
**WANTON DISREGARD**
**(applies to the Father)**
**T.C.A §§ 36-1-102(1)(A)(iv)**

\*\*\*

As with the Father in *In Re: Kierra B.*, No. E2012-02539-COA-R3-PT (Tenn. Ct. App. Jan. 14, 2014), [Father] has been incarcerated for the entirety of the four (4) months preceding the filing of the Petition to Terminate Parental Rights. However, the Father in *Kierra B.* merely was serving a sentence for Sell and/or Delivery in a School Zone; [Father] had been convicted of multiple felony and misdemeanor assaults – violent offenses – as well as a felony conviction for **abusing the minor child at issue in this case.**

"Under this ground, the (trial) court looks at any pre-incarceration behavior that could constitute a wanton disregard for the child."[4] [Father's] testimony at trial included references to behaviors that preceded his incarceration where he was exposing this child to sex offenders, moving his girlfriend into the marital residence, exposing his child to substance abuse and domestic abuse, and a conviction out of Alabama that landed him on the Sex Offender Registry. [Father] also testified to a lengthy history of drug and alcohol abuse. There is clear and convincing proof of serious criminal behavior by [Father] that was detrimental to the welfare of this child. While [Father] provided testimony on one hand that paints a delightful picture of a family unit performing songs together, his more glaring testimony is that of his decision to move his girlfriend into the marital home with the minor child, a domestic arrangement that was only interrupted when [Father] was arrested for stabbing his girlfriend in the arm and neck during a fight. It is noted again that this was not one single lapse of judgment by [Father]; this is a repeated pattern of behavior over the period of several occasions that encompassed the entirety of [the Child's] life prior to [Father's] incarceration, and this repetition served only to increase the jeopardy to [the Child's] welfare.

While [Father's] past includes felony convictions of Aggravated Assault and Aggravated Child Abuse in which the child who is the subject of this action was the victim, these are not the only marks against him with regard to the welfare of this child. [Father's] past clearly demonstrates a willful and

---

[4]Dawn Coppock, "Coppock on Tennessee Adoption Law." (Sixth Ed., 2011), p. 75.

wanton disregard for the welfare and safety of the minor child, all of which follows a pattern of criminality, substance abuse, physical altercations, sexual assaults, and willful poor choices . . . This ground for termination of [Father's] parental rights has been proven by clear and convincing evidence.

## BEST INTERESTS
## T.C.A § 36-1-113(i)

\*\*\*

It is in the minor child's best interests for termination to be granted, because [Father] and [Mother] have not made changes in their individual or collaborative conduct or circumstances that would make it safe for the minor child to go home. [Mother] has continued to have problems with stability and in demonstrating a dedication to sobriety due to her continued use of illegal drugs, unprescribed drugs, criminal activity and abuse of alcohol. [Mother] has failed to make an adjustment of circumstances, conduct, and conditions that would make it safe to return the minor child to her. Furthermore, her inability to remain truthful with members of the Department of Children's Services, the Guardian *ad Litem*, or this court is an additional obstacle that has not been overcome. Sadly, [Mother] has made no lasting adjustment despite the attempts of many to help her. [Father] remains incarcerated and will continue to remain in the custody of the Tennessee Department of Corrections for the foreseeable future. Neither [Father] or [Mother] have provided proof of any substantial progress that they have made towards remedying the issues that led to [the Child] coming into the custody of the Department.

It is in the minor child's best interests for termination to be granted, because [Mother] and [Father] have not made lasting changes in either their lifestyle or conduct after reasonable efforts by the State to assist them, so that lasting change does not appear possible at this point.

It is in the minor child's best interests for termination to be granted, because [Father] has failed to maintain regular, positive, appropriate visitation with the minor child. In fact, it is accurate to state that [Father] has a negative relationship with the minor child through the physical abuse that led to his most recent incarceration. His testimony of his relationship with [the Child] rings hollow. Therapist Rose Gainey indicated that [the Child] only mentioned his father once, and that was in relationship to the police arresting him.

-12-

Crystal [H.], the foster mother for [the Child], said that [the Child] has never referred to his biological father.

It is in the minor child's best interests for termination to be granted, because neither [Mother] nor [Father] has paid reasonable child support other than token support. In addition, neither [Mother] or [Father] has demonstrated the ability to provide for this child that would lead a reasonable observer to conclude that either biological parent would be able to provide for this child over an extended period of time.

It is in the child's best interests for termination to be granted because neither [Mother] nor [Father] has taken the appropriate steps to deal with their respective drug, anger, and domestic abuse problems, and their continued involvement there would make it unsafe to return the minor child to either of them in the near future.

It is in the minor child's best interests for termination to be granted, because the physical environment of [Mother] cannot be vouched for, as she has not been able to provide a suitable home for the nearly fifteen (15) months that the minor child has been in the custody of the Department. It is noted that [Mother] was arrested at her residence for felony drug charges just over six (6) weeks prior to this termination trial. Due to his incarceration, [Father] has not been able to show if he has a home or if it is either healthy or safe.

Despite his claims to the contrary, the court finds that [Father] has a negative relationship with [the Child], having been a victim of abuse at the hands of [Father] as evidenced by his felony conviction for Child Abuse and Neglect, and a change of [the Child's] environment would have a deleterious effect on his well-being.

Taking all of the enumerated factors into consideration, as well as the totality of the circumstances, the lack of credibility of [Mother] in her testimony, the court's familiarity with this case, the proof provided and the argument of counsel, the court finds that termination of [Mother's] parental rights is in the best interest of [the Child].

Taking all of the enumerated factors into consideration, as well as the totality of the circumstances, the lack of credibility of [Father] in his testimony, the court's familiarity with this case, the proof provided and the

argument of counsel, the court finds that termination of [Father's] parental rights is in the best interest of [the Child.]

This best interests determination is found by clear and convincing evidence.

(Footnotes in original but renumbered, footnote excluded, format modified). Mother and Father timely appealed the judgment of the Juvenile Court terminating their parental rights to the Child.

## **Discussion**

Although not stated exactly as such, Mother raises the following issues on appeal: 1) whether the Juvenile Court erred in finding that Mother abandoned the Child by willful failure to provide support; 2) whether the Juvenile Court erred in finding that Mother had failed to substantially fulfill the requirements of her permanency plan; 3) whether the Juvenile Court erred in finding that Mother failed to provide a suitable home for the Child; 4) whether the Juvenile Court erred in finding that Mother demonstrated persistent conditions; and, 5) whether the Juvenile Court erred in finding that termination of Mother's parental rights was in the Child's best interest. Although not stated exactly as such, Father raises the following issues on appeal: 1) whether the Juvenile Court erred in finding that Father abandoned the Child by willful failure to visit; 2) whether the Juvenile Court erred in finding that Father abandoned the Child by willful failure to provide support; 3) whether the Juvenile Court erred in finding that Father failed to substantially fulfill the requirements of his permanency plan; 4) whether the Juvenile Court erred in finding that Father failed to provide a suitable home; 5) whether the Juvenile Court erred in finding that Father demonstrated persistent conditions; 6) whether the Juvenile Court erred in finding that Father had been sentenced to more than two years of imprisonment for conduct against the Child; 7) whether the Juvenile Court erred in finding that Father engaged in conduct exhibiting wanton disregard for the welfare of the Child; and, 8) whether the Juvenile Court erred in finding that it is in the Child's best interest for Father's parental rights to be terminated.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and

convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

We quote from the termination statute the grounds for termination of parental rights relevant to this appeal:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to the provisions of title 37, chapter 2, part 4;

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the a parent or parents or a guardian or guardians, still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the a parent or parents or a guardian or guardians in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

\*\*\*

(5) The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition,

-16-

or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102. Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian;

Tenn. Code Ann. § 36-1-113(g) (2014).

Abandonment means, in relevant part, the following:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the a parent or parents or a guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the a parent or parents or a guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

(ii) The child has been removed from the home of the a parent or parents or a guardian or guardians as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed childplacing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the a parent or parents or a guardian or guardians to establish a suitable home for the child, but that the a parent or parents or a guardian or guardians have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree

-17-

that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department;

\*\*\*

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or
. . . .

Tenn. Code Ann. § 36-1-102 (1)(A) (2014).

We have discussed the willful character of abandonment for failure to support as follows:

This court has consistently held that the term willfulness as it applies to a party's failure to support a child must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999). Indeed, "defining abandonment as the mere non-payment of support [is] unconstitutional because this language creates an irrebuttable presumption of abandonment, irrespective of intent." *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) (citing *In re Swanson*, 2 S.W.3d at 188). The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audry S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005). "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id*. "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id*. at 863-64. Additionally, " '[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no

justifiable excuse for not providing the support.' " *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)).

*In re: Dylan H.*, No. E2010-01953-COA-R3-PT, 2011 WL 6310465, at *6 (Tenn. Ct. App. Dec. 16, 2011), *no appl. perm. appeal filed*.

We first address whether the Juvenile Court erred in finding that Mother abandoned the Child by willful failure to provide support. The record reflects that Mother worked at Johnson's Inn, and, for a period, also had worked at Dunkin Donuts but left when she felt this schedule was excessive. Over the custodial period, Mother worked various jobs, managed to sustain herself, and, on the day of trial, suddenly seemed willing to produce money toward child support. Mother had made only one payment of $50 toward child support, even though she should have paid $750. In our view, Mother's failure to pay child support was willful. The record reflects that Mother had experience with paying child support and knew how to make said payments. The evidence does not preponderate against any of the Juvenile Court's findings relevant to this ground for termination. These facts combine to support the requisite willfulness necessary to sustain the ground of willful failure to support. We affirm this ground under the standard of clear and convincing evidence.

We next address whether the Juvenile Court erred in finding that Mother had failed to substantially fulfill the requirements of her permanency plan. Mother completed her assessment and in-home treatment, but failed to comply with the permanency plan in other respects. The central issue for Mother was that of addressing her substance abuse. By the time of trial, Mother had not resolved her substance abuse problem. This dovetails with Mother's general failure to provide a suitable environment in which the Child could safely live. In our view, Mother's failure to tackle the core problem for her in this case represents substantial noncompliance with the permanency plan. The evidence does not preponderate against any of the Juvenile Court's findings relevant to this ground for termination. We affirm this ground under the standard of clear and convincing evidence.

We next address whether the Juvenile Court erred in finding that Mother failed to provide a suitable home for the Child. A suitable home for purposes of termination of parental rights is not merely a solidly built structure. A suitable home must be a safe and stable environment in which a child can live. The presence of drug paraphernalia in Mother's home, along with Mother's ongoing substance abuse issues, seriously renders her home unsuitable for the Child. The evidence does not preponderate against any of the Juvenile Court's findings relevant to this ground for termination. We affirm this ground under the standard of clear and convincing evidence.

We next address whether the Juvenile Court erred in finding that Mother demonstrated persistent conditions. This ground is especially powerful in Mother's case. As repeated above, the central and unresolved problem facing Mother is her substance abuse. Mother's long-time substance abuse problem still has not been remedied, nor, given her relapse despite repeated efforts to assist, does it appear that this substance abuse problem will be remedied in the near future. The evidence does not preponderate against any of the Juvenile Court's findings relevant to this ground for termination. We affirm this ground under the standard of clear and convincing evidence.

We next address whether the Juvenile Court erred in finding that termination of Mother's parental rights was in the Child's best interest. The Juvenile Court, relying upon Tenn. Code Ann. § 36-1-113(i), made detailed findings as to this issue which are supported by the record. Of particular note on this issue is Mother's longstanding and doggedly persistent substance abuse problem. While some evidence in the record suggests that the Child has a close bond with Mother, Mother's inability to sever her ties with drugs poses an unacceptable risk to the welfare of the Child. The evidence does not preponderate against any of the Juvenile Court's findings relevant to the best interest determination. By the standard of clear and convincing evidence, we find and hold that it is in the Child's best interest for Mother's parental rights to be terminated.

We now move to Father's issues on appeal and first address whether the Juvenile Court erred in finding that Father abandoned the Child by willful failure to visit. This ground is problematic. It is not at all clear from the record that Father failed to visit the Child in the requisite time period as the record shows that Father, Mother, Father's girlfriend, and the Child all lived together during the relevant time period. The Juvenile Court makes mention of Father spending time with his girlfriend rather than spending appropriate time with the Child. Father's unusual arrangement of having a live-in girlfriend may be distasteful, but it does not go to the elements of this ground. The evidence preponderates against this finding of the Juvenile Court, and we, therefore, vacate this ground.

We next address whether the Juvenile Court erred in finding that Father abandoned the Child by willful failure to provide support. This ground, too, poses problems. The record is largely silent as to Father's intentions or ability to provide support to the Child in the relevant time period. As opposed to Mother's case, for instance, where the record reflects that she worked multiple jobs at times and had a history of making child support payments, knew the system, sustained herself and could produce funds at trial, no comparable evidence is available regarding Father. There is a dearth of evidence to sustain willfulness of failure to support on the part of Father. We vacate this ground.

We next address whether the Juvenile Court erred in finding that Father failed to substantially fulfill the requirements of his permanency plan. Again, Father's context must be understood. An incarcerated parent is not absolved of his or her parental responsibilities while in jail or prison. However, incarceration is a relevant consideration when judging that parent's ability to fulfill his or her responsibilities to the child. Among other things, Father completed an alcohol and drug assessment and was in the process of resolving his legal charges. In our judgment, Father did much of what he reasonably could be expected to do under his conditions, and the evidence is not clear and convincing that he failed to comply with his permanency plan in a substantial way.

We are aware of this Court's opinion of *In Re: Kason C., et al.,* No. M2013-02624-COA-R3-PT, 2014 WL 2768003 (Tenn. Ct. App. June 17, 2014), *no appl. perm. appeal filed,* in which this Court found that there was clear and convincing evidence to support the Juvenile Court's finding that the father there had failed to substantially comply with the reasonable parenting responsibilities set out in the parenting plans, at least in part, because of the father's incarceration. This Court in *In Re: Kason C.* correctly noted that a parent's substantial noncompliance with a permanency plan is not required to be willful to justify termination of that parent's parental rights on that ground. We, however, believe that caution by the courts is appropriate here to avoid making incarceration solely on its own into a de facto ground for termination. Clearly in most situations an incarcerated parent is going to be unable to complete at least some significant portion of the permanency plan. Our General Assembly, however, has not deemed it appropriate to make incarceration solely by itself a ground for termination. This being so, we are concerned that a blanket holding that a parent who is unable to complete a permanency plan solely because of his incarceration may, in effect, have his parental rights terminated not because of failure to substantially comply with the permanency plan but, in reality, because of his incarceration. We vacate this ground.

We next address whether the Juvenile Court erred in finding that Father failed to provide a suitable home. Father testified to having a home lined up upon his eventual release. The Juvenile Court found this prospective home to be illusory. Once again we encounter the same difficulties presented by Father's incarceration. What additional reasonable efforts should or could the incarcerated Father have made to procure a suitable home for the Child? Is every incarcerated parent de facto liable under this ground? We believe not. In our judgment, clear and convincing evidence has not been adduced that Father failed to provide the Child with a suitable home. We vacate this ground.

We next address whether the Juvenile Court erred in finding that Father demonstrated persistent conditions. This issue presents a technical problem. Father was incarcerated when the Child was removed from Mother's home. In our understanding of this

ground for termination, the Child must be removed from the home of the parent whose rights are sought to be terminated under the ground. Here, the Child was not removed from Father's home, as such, because Father was incarcerated some time before the Child's removal and the home had ceased to be Father's home for purposes of the persistent conditions statute. Therefore, we cannot find the other elements of persistent conditions, and we vacate this ground.

We next address whether the Juvenile Court erred in finding that Father had been sentenced to more than two years of imprisonment for conduct against the Child. The Juvenile Court correctly identified the relevant statute, applied the facts of this case including Father's convictions which were entered into the record, and concluded that this ground for termination of parental rights was sustained by clear and convincing evidence. Father argues that the ground is inapplicable in that the Child was not the target of his violence. However, we are constrained to note the entry of a conviction involving child abuse relating to the Child, and, as did the Juvenile Court, we find Father's explanations for his conduct unavailing. The evidence does not preponderate against any of the Juvenile Court's findings relevant to this ground for termination. We affirm this ground under the standard of clear and convincing evidence.

We next address whether the Juvenile Court erred in finding that Father engaged in conduct exhibiting wanton disregard for the welfare of the Child. Father's history is rife with violence, substance abuse, and criminality. We note the Juvenile Court's finding, supported by Father's testimony in the record, of Father's waffling explanations for his behavior. Explanations aside, Father's pattern of violence, which has exposed the Child to harm and resulted in Father's prison sentence, has demonstrated a profound disregard for the Child's well-being. The evidence does not preponderate against any of the Juvenile Court's findings relevant to this ground for termination. We affirm this ground under the standard of clear and convincing evidence.

The final issue we address is whether the Juvenile Court erred in finding that it is in the Child's best interest for Father's parental rights to be terminated. The Juvenile Court made detailed findings as to this issue as quoted in this Opinion and which we need not set forth again. The evidence does not preponderate against any of the Juvenile Court's findings relevant to the best interest determination. We affirm, by clear and convincing evidence, the Juvenile Court's finding that it is in the Child's best interest for Father's parental rights to be terminated.

In sum, we affirm the termination of Mother's and Father's parental rights. We modify the Juvenile Court's judgment to vacate certain of the grounds against Father. Specifically as regards Father, we affirm the grounds of 1) a sentence to more than two years

for conduct against the Child and 2) wanton disregard, and vacate the other grounds for termination of parental rights.  The judgment of the Juvenile Court is affirmed as so modified.

### Conclusion

The judgment of the Juvenile Court is affirmed as modified, and this cause is remanded to the Juvenile Court for collection of the costs below.  The costs on appeal are assessed equally against the Appellants, Amy F. and Uriah F., and their surety, if any.

_____
D. MICHAEL SWINEY, JUDGE